# SEPTA v. Transport Workers Union of America, Local 234

*Daniel V. Johns,* for plaintiff.
*Bruce Bodner,* for defendant.

PANEPINTO, *J.,* October 22, 2010—Petitioner, Southeastern Pennsylvania Transportation Authority ("SEPTA"), appeals this court's order dated July 22, 2010, denying petitioner's motion to Vacate an arbitration award.

## PROCEDURAL AND FACTUAL BACKGROUND

This matter stems from an April 9, 2010 arbitration award by Arbitrator Walter De Treux in a labor arbitration between SEPTA and Transport Workers Union of America, Local 234 ("Union"). SEPTA sought to

discharge Gilbert Stringfield ("Stringfield"), a SEPTA bus operator since October 2001, after an encounter with Shanique Scott ("Scott"), a SEPTA maintenance custodian. Stringfield and Scott were in a romantic relationship at the time of the incident. On July 21, 2007, Scott was at Stringfield's residence. Stringfield wanted to have sexual relations with Scott. Scott, however, declined Stringfield's requests. Stringfield then became physically violent with Scott and forced himself on her. Scott called her mother to report what had happened after Scott had left the room. Scott's mother called the police, who arrived at Stringfield's residence and arrested him (See Arbitrator's Award p.1). Scott obtained a restraining order against Stringfield, barring him from having any contact with Scott whatsoever. Scott does not contend that Stringfield violated the order (See Ar. Award p. 10).

Stringfield was formally charged with multiple crimes including: sexual assault (F2), indecent assault forcible compulsion (M1), simple assault (M2), rape forcible compulsion (F1), recklessly endangering another person (M2), and aggravated assault (F2) (See formal charges, Ex. C, motion to vacate).

In addition to these charges, SEPTA also brought Bus Operations Rules and Regulations Manuals charges against Stringfield for personal conduct, assaulting an employee, and violation of law. The union requested the charges for personal conduct and assaulting an employee be dismissed, and the charge for violation of law held in abeyance pending the outcome of the criminal matter. SEPTA honored this request, dropped two of the charges and removed them from Stringfield's performance record

(See October 10, 2007 letter to President of Local 234, Ex. E, motion to vacate). Stringfield was placed in a maintenance custodian position during this time, pending resolution of the criminal charges against Stringfield.

Stringfield agreed to a plea deal in which the felony charges for sexual assault, rape forcible compulsion, and aggravated assault were nolle prossed and he pleaded guilty to indecent assault forceible compulsion, simple assault, and recklessly endangering another person (See disposition and dismissal, Ex. C, motion to vacate). Stringfield pleaded guilty to the misdemeanors only and the felony charges were nolle prossed. (See June 23, 2009 order, Ex. C, motion to vacate). Defendant was sentenced to three (3) years probation, restitution, and counseling. (See September 4, 2009 order, Ex. C, motion to vacate).

On June 26, 2009, SEPTA made known its intention to discharge Stringfield under section 201D of the collective bargaining agreement ("CBA"). A formal hearing occurred on September 24, 2009, after which Stringfield was discharged. SEPTA made this determination because of this provision; "a. An employee who is convicted of any criminal offense which was committed when the employee was not in an employment status, i.e. not committed while on duty...may be discharged when: (2) the employee's conviction relates to the employee's suitability for continued employment in the position then held" (See SEPTA Policy Instruction, Ex. J, motion to vacate). This requires a showing that there is a nexus between the continued employment and his duties and responsibilities as a bus driver. SEPTA admitted that a violation of law does not require an automatic discharge

but rather is determined under the facts of the case. (See Arb. Award p.5). SEPTA determined that Stringfield's criminal convictions related to his suitability for continued employment as a SEPTA bus driver because of the nature of his crimes and that Stringfield works unsupervised with the public as a bus driver.

The union filed a grievance on October 2, 2009. There was a labor relations step hearing on October 15, 2009. SEPTA upheld the discharge as it found that the crimes committed were directly related to Stringfield's position as a bus operator and raised concern for the safety and well being of the riding public (See Labor Relations Step Hearing Report, Ex. I, motion to vacate).

Arbitration soon followed. Scott testified that reinstatement of Stringfield would make her feel uncomfortable and unsafe. The arbitration award was issued on April 9, 2010. The arbitrator did find Stringfield's actions against Scott to be egregious and offensive. However, he ordered that Stringfield be reinstated with back pay for reasons more fully discussed in the discussion section below. In short, the arbitrator did not find a nexus between the crimes committed and Stringfield's suitability for work (See Arb. Award p. 10).

## ALLEGATIONS OF ERROR

On August 25, 2010, this court entered an order directing defendant to file a Rule 1925(b) statement no later than twenty (20) days after the entry of the order. Defendant filed a rule 1925(b) statement pursuant to this court's order on September 14, 2010. Defendant has raised the following issues on appeal:

1. The court erred in refusing to vacate the arbitration award on the basis that the award violates Pennsylvania's well-defined, dominant public policy in favor of protecting the interests of victims of crime and ensuring that such victims are treated with dignity and respect.

2. The court erred in refusing to vacate the arbitration award on the basis that the award violates Pennsylvania's well-defined, dominant public policy requiring public transportation systems to provide for the safe transportation of the riding public.

3. The court erred in refusing to vacate the arbitration award on the basis that the award violates Pennsylvania's well-defined, dominant public policy promoting workplace safety and imposing a duty on employers to provide a safe workplace.

4. The court erred in refusing to vacate the arbitration award on the basis that the award violates Pennsylvania's well-defined, dominant public policies against sexual harassment in the workplace and in favor of voluntary employer prevention and remediation of workplace sexual harassment.

5. The court erred in refusing to vacate the arbitration award on the grounds that the award is not rationally derived from nor does it have a foundation in the collective bargaining agreement ("CBA") and, therefore, does not draw its essence from the CBA.

## DISCUSSION

Where, as here, a labor arbitration award is challenged on the basis that the award exceeds the power of the

arbitrator, the Pennsylvania Supreme Court has adopted the "essence test" as the standard of judicial review which states that an arbitration award is legitimate "so long as it draws its essence from the collective bargaining agreement." See *State Sys. Of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof 1 Ass'n (PSEA/NEA)*, 560 Pa. 135, 743 A.2d 405 (Pa. 1999). The prongs of the "essence test" have been stated by the Supreme Court as follows:

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.*Id.* at 150, 743 A. 2d. at 413.

An arbitration award may also be vacated if it violates a strong public policy. The public policy must be well defined and dominant and must reference laws and precedent. The award's violation must be clearly shown for the award to be vacated.

Petitioner's first point is the arbitrator's award is not upholding Pennsylvania public policy by treating victims of crimes with dignity or respect. This is not true in the present circumstances. The award bars Stringfield from

working in the same area as Scott. Scott admitted that since she obtained a restraining order against Stringfield, Stringfield has not violated its terms by contacting Scott. Scott has not encountered Stringfield inside or outside of work since the incident. Scott and Stringfield live in the same neighborhood in Philadelphia. As the award points out, there is a better chance of them encountering each other in their neighborhood than at work. Adequate precautions have been put in place to ensure that Stringfield is not positioned to work near Scott. This has been successful as the two have not come into contact for over three (3) years already. This shows respect for the victim as it makes sure Scott does not have to encounter her attacker in the work place and she can work freely and effectively in her position with SEPTA.

The second point raised by petitioner alleges the award violates the public policy of requiring public transportation systems to provide for the safe transportation of the riding public. This also has not been violated. As the award adequately addresses, Stringfield has worked for SEPTA for nine (9) years. There have been no reported on the job problems with Stringfield and the public or fellow SEPTA employees during that time. His record is clear of such physical or violent activity. Therefore, there is no issue related to the public having safe transportation. His driving record has not been shown to be a concern for the safety or well being of SEPTA riders or SEPTA employees. The incident with Scott was a private and unfortunately egregious act between two people formerly involved in a romantic relationship. It was not committed on the job, but rather in the confines of

Springfield's home.

The third issued raised by petitioner alleges the award violates the public policy of providing a safe workplace. This public policy has been upheld in the award. Stringfield is not allowed to work near Scott. For over three (3) years, the two have not encountered each other on the job. Also, Stringfield was not found to have a history of this type of violent and offensive behavior. His actions were an isolated incident done in a private setting, not on the job. The psychological evaluation Stringfield underwent attests to this fact. He was found to have no prior arrests and did not pose a threat to the public, was not a sexual predator, and would only need average supervision and counseling (See Mental Health Evaluation, Ex. H).

The fourth issue raised alleges the public policy of preventing workplace sexual harassment was violated by the award. This argument fails as do the previous ones. The crimes committed by Stringfield did not occur in the workplace. It was a private occurrence in Stringfield's residence. There has been no showing that Stringfield ever engaged in any sexually or physically inappropriate actions in the workplace. The mental health evaluation stated that Stringfield can be in public. While he does have some issues with female symbols as is stated in the report, there is no reason to think that will cause any harm during his working hours for SEPTA. His work record is free and clear of these allegations. Stringfield has been a very good employee on the job. This allegation is simply unfounded and unsubstantiated speculation by SEPTA. The psychological evaluation and any counseling can

certainly help Stringfield with his minor problems with female symbols. He is not a sexual predator according to this evaluation so this argument must also fail. The last issue raised by petitioner alleges the award does not draw its essence from the CBA. The CBA includes grievance and discharge procedures for misconduct and violations of the law. The first part of the test is satisfied. The second prong is also met. The CBA states an employee may be discharged for violations of the law. However, as SEPTA admits, there is not an automatic discharge for violations of the law. The crime needs to have a nexus to the work performed by the violator. This was not shown here by SEPTA. The arbitrator found that the crimes, however offensive, occurred during a private relationship not during the work day. Stringfield has never been found to have a problem during his nine (9) years of service to SEPTA as a bus operator. The award takes into consideration the wording of the CBA, the "just cause" standard for termination of employment, the mental health evaluation of Stringfield, the testimony of Scott, Stringfield's performance record, and the severity and nature of the crimes committed. After weighing all of those factors, the award states that SEPTA did not meet its burden in showing the nexus between the crimes committed and the ability of Stringfield to continue his employment. This decision was not arbitrary or capricious. The arbitrator noted the severity of the crimes but again asserted that one isolated incident does not instantly undue the nine (9) years of faithful, safe, and responsible employment of Stringfield. Therefore, the award logically flows from the CBA and was made after

careful consideration of all the relevant factors in this case. The fifth issue raised fails to show how the award violates the CBA.

Accordingly, for the reasons stated above, this appeal should be denied.